**Steven BLOCK, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION, et al., Defendants.**

Civ. A. No. 84–2065.

United States District Court, District of Columbia.

Aug. 8, 1986.

Thomas Susman, Washington, D.C., for plaintiffs.

Judith Bartnoff, Asst. U.S. Atty., for defendants.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

Plaintiffs, residents of Georgia, initiated this suit to obviate the Department of Transportation (D.O.T.) administrative decision withdrawing highway funds earmarked for I–420 construction. The procedural imbroglio, outlined by plaintiffs, focuses primarily on that portion of the administrative decision which approved the politically controversial project, Georgia 400, as a potential substitution project. Plaintiffs contend that if the decision is upheld they will be adversely affected. The issue presented to this Court, on cross-motions for summary judgment, is whether the administrative decision was arbitrary and capricious or contrary to law. After a thorough review of the record, the motions and the oppositions thereto, the Court concludes that the decision does not violate the applicable statutes.

I

This action involves a short segment of I–420, planned for construction in Atlanta, Georgia, and unincorporated Dekalb County. Specifically, I–420 would pass through southeast Atlanta, which is an economically underdeveloped area of the city. Therefore, the city anticipated that construction would create jobs and stimulate economic activity in the area. Implementation of this plan, however, was doubtful and "demapping" was suggested as an alternative. PSMF ¶ 29. If I–420 were demapped, the City Council members wanted to encourage other transportation improvements on the south side. For this reason, there was particular concern that the 108.8 million dollars allocated for I–420, if withdrawn, be diverted to projects in Atlanta's southern district. The Atlanta City Council strongly objected to construction of the North Atlantic Parkway (GA 400), which would run from I–285 southward to I–85 in the northern section of town. In addition, it was estimated that construction would cost close to 100 million dollars. The expense

would preclude the selection of numerous other substitution projects which the City Council believed were necessary for the southern district's survival. PSMF ¶ 30.

On May 16, 1983, the Atlanta City Council passed a resolution, which reflected their position on I-420 withdrawal and substitution programs. This resolution made several statements. First, it explicitly rejected construction of GA 400. Secondly, the resolution supported I-420 withdrawal. Third, it recommended other substitution projects. (Pl. Exh. 2) (D. Exh. 5) On June 20, 1983, another resolution was passed to clarify the Council's position:

Now, therefore, be it resolved by the Council of the City of Atlanta, Georgia, that the City Council restates and reaffirms its opposition to the withdrawal of I-420 funds for use in connection with Georgia 400 and that Council advises the Mayor of its expectation that he will respect the Council's position as articulated in this resolution and the Council's May 16, 1983 resolution.

Be it further resolved that the Council expresses its expectation that the Mayor will not concur in any application for withdrawal of I-420 funds unless and until the State of Georgia agrees that the list of substitute projects to which the I-420 funds may be applied shall not include Georgia 400 or the widening of I-20 East.

(P. Exh. 4, D. Exh. 6).

Mayor Andrew Young acknowledged by letter that both resolutions became law without his signature. He confirmed that the resolutions were an affirmation of the Council's desire to have I-420 withdrawn. "A clear consensus has developed with our city that I-420 should not be built." (P. Exh. 5, D. Exh. 6) Additionally, he stated support for the Council's opposition to GA 400 and he offered to "support the position taken by the Council." There was a difference of opinion, however, on how the I-420 funds should be reprogrammed. *Id.*

Pursuant to 23 U.S.C. § 103(e)(4), on August 11, 1983, Governor Joe Frank Harris requested that Federal Highway Administration (FHWA) withdraw I-420 from the interstate system. His letter stated that the Georgia Department of Transportation, the Atlanta Regional Commission, the City of Atlanta, Dekalb County and Fulton County concurred in the decision. The City of Atlanta's May resolution was attached in addition to resolutions from the other counties and commissions. Accompanying the request for withdrawal was a concept program for substitute projects. Included in this list was GA 400. The letter candidly represented, inter alia, that the Atlanta City Council opposed GA 400 as a substitute project. However, it was silent on the Council's position that I-420 withdrawal was conditioned upon GA 400 not receiving I-420 funds (P. Exh. 6, D. Exh. 5). The deadline for federal action on the withdrawal request was September 30, 1983. 23 U.S.C. § 103(e)(4).

On September 29, 1983, the Department of Transportation, Federal Highway Administration, Urban Mass Transportation Administration issued a letter in reply to Governor Harris' request for I-420 withdrawal and approval of substitute projects. The letter, signed by FHWA Administrator, Ray Barnhart, and Acting Deputy Administrator, G. Kent Woodman, stated approval for withdrawal of I-420 funds:

We have determined that I-420 is not essential to completion of a unified and connected Interstate System. The westerly 0.60 mile segment of I-420 is considered open to traffic, as defined in 23 C.F.R. § 476.2(b)(6), and cannot be withdrawn from the Interstate System. We recently received additional information which makes the extent of local support for the withdrawal unclear. Therefore, we are approving the withdrawal of the easterly 5.40 mile segment of I-420 subject to receipt of clarification concerning the support for the withdrawal by the local governments concerned ...we are also approving all 31 of the substitute project concepts listed in the "CONCEPT PROGRAM, I-420 Withdrawal: Fulton/Dekalb County, Georgia" subject to receipt of the above noted clarification.

(P. Exh. 7, D. Exh. 7). In the ensuing months, FHWA investigating officers sought the "necessary clarification".

The gravamen of plaintiffs' claim is that the City Council members specifically made their withdrawal approval contingent upon rejection of GA 400 as a substitute project. (P. Exh. 8.) Many D.O.T. officials clearly questioned the extent of the Atlanta City Council's approval when GA 400 was unequivocally a potential substitute project. (P. Exh. 10, 21A.)

On July 10, 1984, Governor Joe Harris, requested expedition of the I–420 issue. He claimed that the state was unable to program preliminary engineering funds against the substitute project GA 400 due to the conditional nature of the FHWA approval. (P. Exh. 13.) Specifically, on the issue of local government support, he stated:

Also, the Atlanta Regional Commission, which is the designated MPO for the Metropolitan Atlanta Area—has provided a detailed history of the region's support for the withdrawal of I–420. I believe the documentation conclusively shows that all local governments have shown their support for the withdrawal.

I feel that the State of Georgia has met both the letter and the spirit of the regulations in the federal laws concerning local government concurrence. The Atlanta Regional Commission has endorsed the substitute project concepts, and I do not feel that it is appropriate under federal law to permit a single entity within the MPO to obstruct the will of the majority.

PSMF ¶ 44 (P. Exh. 13).

Attached to the Governor's letter was Attorney General Michael Bowers' legal opinion. In short, it represented the Council's opinion as two fold: approving withdrawal of I–420 and opposing substitution of GA 400. (P. Exh. 13A) The opinion did not address the legal significance of the Council's conditional approval. Nor did it elucidate on the Council's role as the city's mouthpiece. It did, however, conclude that "it is anticipated but not always required,

that the local government within whose jurisdiction the segment lies will approve the withdrawal. 23 C.F.R. §§ 476.308 & 476.310" (P. Exh. 13A).

Plaintiffs responded to the Governor's July 10th letter by filing suit in district court. Responses from FHWA came on September 11, 1984, in letter form. All conditions were removed from the approval of I–420 withdrawal and the substitute project list. (P. Exh. 18, D. Exh. 1).

Plaintiffs conclude that this decision was the result of lobbying efforts and thereby was purely politically motivated. Further, they contend that the evidence plainly controverts defendants' assertions. (P. Exh. 20 ¶ 6, 7.) The federal highway administrator stated that the Governor's letter and other information received since September 1983 provided the necessary clarification. (P. Exh. 18, D. Exh. 1.) Significantly, the defendants do not submit any exhibits reflecting this "other" clarification. The paucity of defendants' evidence in contrast to plaintiffs' plethora, admittedly raises questions concerning the basis for the D.O.T. decision to lift the conditions. The facts applied to the statutory framework, however, explain why this case has such a pervasive political nature. Before turning to the applicable statutory parameters, the Court will address some preliminary concerns.

## II

Defendants contest plaintiffs' standing to bring this suit. They assert that plaintiffs do not suffer any injury in fact. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). That GA 400 has not formally been selected as the actual substitution project does not in itself preclude standing in this case. Other factors are equally relevant.

The evidence suggest a strong likelihood that GA 400 is earmarked for construction. (P. Exh. 24, 25, 26, 27.) Additionally, substitute projects selected from the approved FHWA project concept list must be under

construction or under contract for construction by September 30, 1986. 23 C.F.R. § 476.310(g). A plaintiff need not await the consummation of a threatened injury in order to have standing; it is sufficient that the injury is imminent. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). Plaintiffs must show that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United For Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In this case plaintiffs represent citizens whose neighborhoods, (1) would be devastated by construction of GA 400, (2) would suffer economic impoverishment if I–420 were withdrawn and (3) would be deprived of beneficial roads which, but for the construction of GA 400 would likely be funded by the I–420 withdrawal money. P. Reply p. 17. If the administrative decision was improper, a judicial determination rescinding I–420 withdrawal cures some alleged harm. Deleting GA 400 from the substitute list affects other injuries. The Supreme Court has held that D.O.T. action authorizing highway funding is reviewable by the Courts. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In light of the posture of this case, the evidence suggesting that GA 400 may be constructed and the undeniable fact that I–420 funds are withdrawn the Court concludes that plaintiffs have standing.

### III

The applicable standard of review in this case is whether the administrative decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A) (Supp. V. 1964). To make this finding the Court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and care-ful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. at 416, 91 S.Ct. at 824. Only where the error is so clear as to deprive the agency's decision of any rational basis will the Court deem the decision unlawful. *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d 1, 34–36 n. 74 (D.C.Cir.1976), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).

In highway matters, the Secretary of Transportation, with the authority delegated by Congress, is entrusted to apply his expertise to the considerations Congress intended to make relevant. To the extent that he acts within his discretion the Court's role as a reviewing court is constrained. *D.C. Federation of Civic Association v. Volpe,* 459 F.2d 1231, 1247–1248 (D.C.Cir.1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972). The pivotal inquiry, therefore, is what parameters are applicable to decisions authorizing highway withdrawal. The Court's analysis of the statutory framework is as follows.

### IV

The Federal-Aid Highway Act of 1976, as amended, provides that planned segments of the interstate highway system may be withdrawn by the Secretary of Transportation before construction. 23 U.S.C. § 103(e)(4). "Upon the joint request of a state Governor and the local governments concerned, the Secretary may withdraw his approval of any route or portion thereof on the Interstate System which was selected and approved in accordance with this title ..." 23 U.S.C.A. § 103(e)(4) (Supp.1986). In 1980 the Federal Highway Administration, D.O.T., promulgated certain regulations to prescribe policies and procedures for implementation of 23 U.S.C. § 103(e)(4). 23 C.F.R. § 476.304(a) parrots the joint request requirement stated in 23 U.S.C. § 103(e)(4):

(a) A request to withdraw an Interstate segment within a State under this subpart shall be *submitted jointly by the Governor and local governments concerned.* For those segments within urbanized areas, *the concurrence of responsible local officials is also required.* The withdrawal request shall be submitted to the Federal Highway Administrator and the Urban Mass Transportation Administrator through the Federal Highway Administrator.

(b) Joint submittal may be accomplished by a single request prepared by the Governor and concurred in by the local governments concerned. This *may also be accomplished by a request by the Governor with separate concurrence documentation by the local governments concerned.* In either case, for those segments within urbanized areas, the concurrence of responsible local officials is also required. *While unanimous local action is not required, the withdrawal request is expected to have substantial support.*

23 C.F.R. § 476.304 (emphasis added).

Under section (b) joint submittal may be accomplished by a single request prepared by the Governor and concurred in by the local governments concerned. 23 C.F.R. § 476.304(a)(b). Local governments concerned means local units of general purpose government under state law within whose jurisdiction the interstate segment lies. 23 C.F.R. § 476.2(b)(5). Responsible local officials means principal elected officials of general purpose local government acting through the Metropolitan Planning Organization. 23 C.F.R. § 476.2(b)(7). In Atlanta, this organization is the Atlanta Regional Commission (ARC). Included as members of the ARC are the Chief Executive Officers of each county and incorporated municipality in the Atlanta metropolitan area. 23 C.F.R. § 450.108(b).

The concept approval for substitute projects is outlined in 23 C.F.R. § 476.308 and § 476.310. The process to submit substitute projects for approval involves the responsible local officials of the urbanized area. FHWA approval of these concept programs does not commit funding nor does it constitute an obligation on the State or local governments to fully implement the projects.

The statutory scheme, as outlined above, obviously contemplates agency, committee and official discretion in the decisionmaking process. The crucial question, however, is what constitutes concurrence among the numerous entities concerned.

The statute and regulations clearly delineate between the procedures for withdrawal and those for approval of substitution projects. The principal Federal decision in an Interstate withdrawal request is the determination that the segment is not essential to completion of a unified and connected Interstate System. 45 Fed.Reg. 2,296 (1980). Urbanized area substitution projects must be based on the urban transportation planning process for the area and selected by the MPO. Section 476.308 now requires submission of a concept program identifying the proposed substitute projects. The substitute projects concepts included in the program must be selected in a manner consistent with procedures set out for selection of substitute projects, ie., selected by responsible local officials. The FHWA believed that the selection by local officials in a manner based on urban transportation planning process "will insure that the project concepts included reflect the needs and desires of State and local governments." 45 Fed.Reg. 2,300 (1980). Where the withdrawal process includes the Governor, local governments affected and the Metropolitan Planning Commission (responsible local officials), the selection of the substitution is essentially in the hands of the responsible local officials. This is significant because plaintiffs argue that the approval of I–420 withdrawal was *conditioned* on GA 400 not being selected as a substitution project. It is not intended that the Atlanta City Council should have a weighted influence in selection of substitute projects in light of the distinction in the processes controlling withdrawal and substitution projects.

The Court notes, however, that conditional concurrences are not as unknown as defendant would have the Court believe. The record reveals that:

In several previous instances, concurrences have been conditioned on future state and local action. This has delayed the Federal review process. To avoid placing the Federal Government in a position of judgment and enforcement in State-local matters, conditional concurrences will be accepted only where the concurring bodies indicate that the conditions have been satisfied or withdrawn. The Governor and local governments concerned are expected to have any differences resolved prior to submission of the withdrawal request.

45 Fed.Reg. 2299 (1980).

In the matter before this Court, the FHWA did not refuse to accept the Governor's request. However, it is clear that FHWA conditioned approval upon further clarification.[1] (P. Exh. 7, D. Exh. 7.) If the joint submittal of concurrence does not mandate unanimity then the City Council's conditioned concurrence would not necessarily bar the approval of withdrawal. The plain meaning of Section 476.304(b) favors plaintiffs' view that support must be unanimous. On closer scrutiny, however, the legislative history evinces a contrary interpretation. The agency comments relevant to this issue are illustrative:

Section 476.304(b) is added to clarify the joint State-local submission process. It permits local governments to concur in the State's proposed withdrawal request rather than literally submit a joint request with the Governor. It also includes the policy established when the present regulations were published that the *joint State-local submission requirement does not mean that unanimous approval of all local governments*

concerned is necessary but rather that the proposed withdrawal has substantial local support. While it is not feasible to prescribe a numerical standard, local officials are expected to act cooperatively to develop proposed actions which will have the support of a substantial majority of those concerned. *These decisions will often be of a political and practical nature reflecting competing interests.* The involvement of the metropolitan planning organization will insure a certain regional perspective in actions taken. These *regulations are intended to establish only the necessary outer parameters of these actions which must essentially be resolved locally.*

45 Fed.Reg. 2299 (Jan. 1980) (emphasis added).

At least six commentators took issue with the lack of precision in not requiring unanimous local support for withdrawal of an Interstate segment. Recommendations were received suggesting the regulations require total support of all local governments concerned or support of a majority or a stated percent of the local governments concerned. *The Department continues to view the statutory language as not requiring local unanimity and basically judgmental in application. Substantial local support coupled with the approval of the Governor* and in urbanized areas with concurrence of responsible local officials have proven to be a workable approach in withdrawal submissions to date, and would become no clearer if assigned a numerical guideline.

45 Fed.Reg. 69,393 (Oct. 1980) (emphasis added).

It appears in highway matters of this nature, the department will not substitute its judgment regarding the needs or desires of the local constituencies concerned. It "ex-

---

**1.** It is also noteworthy that the Governor's request was submitted on August 11, 1983. The FHWA asked that withdrawal requests be in by July 30, 1983, to permit them to review the matter in time for the September 30th cutoff date. The approval subject to receipt of clarification came on September 29, 1983. The time factor alone certainly could account for the FHWA determination that approval should be conditioned. There is nothing in the record, however, to support this conjecture so it will not be considered as anything more than speculation.

pects" or "assumes" that the political disputes will be worked out, at a distance from the FHWA involvement. Although letters to FHWA staff and other evidence strongly suggest that local flames of dispute still flared, the Governor assured the FHWA in a letter dated July 10, 1984, that the documentation "conclusively shows that all local governments have shown their support for the withdrawal". Additionally, Attorney General Mike Bowers concurred that "it is anticipated, but not always required, that the local government within whose jurisdiction the segment lies will approve the withdrawal". The Attorney General also portrayed the Council's position as *two-fold;* a desire to see the I–420 funds withdrawn and opposition to the construction of GA 400. The Governor concluded his July 10th letter with, "I feel that the State of Georgia has met both the letter and the spirit of the regulations in the federal laws concerning local government concurrence." (P. Exh. 13.)

Again, the intent of the regulations suggest that the Governor and State and local officials make determinations regarding highway needs, support and essentiality.

> The Federal Government will not be an arbiter in these matters of State and local decisionmaking. At that time the statement referred to State-local coordination of withdrawal requests and to disagreements about essentiality of Interstate segments ... Each of these and other important decisionmaking areas can have critical State-level, State-local and local-level implications *which are properly resolved, when necessary by the Governor prior to Federal involvement.*

45 Fed. Reg. 69,391 (Oct. 1980) (emphasis added).

In light of the deference given to the Governor, and the political nature of local decisionmaking, the July 10th letter from Governor Harris, confirming substantial support for I–420 withdrawal reflects a rational basis for the decision to lift approval conditions. Although the FHWA officials in fact investigated the question of local support, it is clear to this Court that the agency's role is a limited one.

V

After a thorough review of the entire record, the Court is convinced that the Atlanta City Council was not opposed to withdrawal of I–420. In addition, the Court is equally persuaded that the Council adamently opposed the construction of GA 400. Inasmuch as the regulations call for joint concurrence, the local governments need not represent a unanimous opinion. Instead, substantial support coupled with the Governor's approval is required.

The clear warning is that the agency must not be involved in judging the political decisionmaking processes, so integral to urban highway planning. Furthermore, even though the Atlanta City Council may have sought to influence decisionmaking on the substitute projects, the regulations place the final determinations with the representatives of the Metropolitan Planning Commission.

Plaintiffs ask this Court to delete GA 400 as an eligible project or in the alternative, disapprove the withdrawal of I–420. To grant the former request would be to accord the City Council more power in the substitute project decisionmaking than is due. To grant the latter request would be to ignore the presumption of regularity afforded the Secretary's decision and overlook the Governor's solemn averment of substantial local support. *See, Citizens to Preserve Overton Park, Inc. v. Volpe,* 91 S.Ct. at 823. The Court concludes that the D.O.T. decision was not arbitrary, capricious or contrary to law. Consequently, the approval of I–420 withdrawal should stand and defendants' summary judgment motion should be granted.

An appropriate Order has been issued.