**Steven BLOCK, et al., Appellants,**

v.

**U.S. DEPARTMENT OF TRANSPORTA-TION, et al.**

**No. 86–5584.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1987.
Decided July 2, 1987.

David F. Walbert, Atlanta, Ga., for appellants.

William T. Dempster, Sp. Asst. U.S. Atty., of the Bar of New York State, Court of Appeals, Appellate Division, 2nd Department, pro hac vice by special leave of Court, with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, Michael J. Ryan, R. Craig Lawrence and Robert C. Seldon, Asst. U.S. Attys., Washington, D.C., were on the brief for appellees.

Before WALD, Chief Judge, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

The Federal-Aid Highway Act (Act) provides that the Secretary of Transportation (Secretary or Department) may withdraw her approval of a portion of the Interstate Highway System "[u]pon the joint request of a State Governor and the local governments concerned." 23 U.S.C. § 103(e)(4). On September 29, 1983, one day before the statutory deadline for approval of such withdrawals and concomitant substitute projects, the Secretary, acting through the Federal Highway Administration (FHWA), approved the withdrawal of funds for I–420 in Atlanta, Georgia, and the substitution of thirty-one project concepts. Because the FHWA had "recently received additional information which [made] the extent of local support for the withdrawal unclear," Joint Appendix (J.A.) at 92, the approvals were "subject to receipt of clarification concerning the support for the withdrawal by the local governments concerned." *Id.*

The problem was this: The City of Atlanta, one of two local governments concerned (the other being DeKalb County), had clearly and unequivocally resolved that it supported the I–420 funds withdrawal only on the condition that the funds would not be used to build the Georgia 400 highway project. J.A. at 103.[1] The City Council

---

1. The Atlanta City Council first passed a resolution on May 16, 1983, that rejected the Atlanta Regional Commission's recommendation to construct Georgia 400, while at the same time approving the withdrawal of I–420 funds and substitution for other projects. J.A. at 97–101. On

wanted the funds shifted to other projects in the poorer sections of Southeast Atlanta; the Georgia 400 project would run through the more affluent North Atlanta. Although the Governor, DeKalb County, and the Atlanta Regional Commission (a group of local officials that also had to concur in the withdrawal application, pursuant to Department regulations [2]), all had agreed that the funds could be shifted to the Georgia 400 project, the opposition of the Atlanta City Council presented an apparent hurdle to Department approval, for the Department explicitly conditioned its approval on "clarification" regarding the support for the withdrawal by the local governments concerned.

By the summer of 1984, a year later, nothing had changed. Yet, after receiving a letter from the Governor stating that one entity should not be able to "obstruct the will of the majority," J.A. at 113, the Department, again acting through the FHWA, removed the conditions contained in the September 29, 1983, approval letter. J.A. at 125. This September 11, 1984, letter from the FHWA told the Governor that "[y]our letter and other information received since September 1983 have provided the necessary clarification." *Id.*[3]

Two months prior to this final approval, plaintiffs, Atlanta residents whose neighborhoods would either be damaged by the construction of Georgia 400 or improved by the building of other projects in its place, had filed suit in District Court, asking for a declaratory judgment that no I–420 transfer funds be used to construct Georgia 400. J.A. at 4. On July 25, 1986, the District Court granted defendants' summary judgment motion, and dismissed the complaint. J.A. at 138. In a memorandum opinion issued August 8, 1986, the District Court explained that the Department's regulations require only "substantial support" among local governments concerned. 643 F.Supp. 762, 768–69 (D.D.C.1986), J.A. at 153–55; *see* 23 C.F.R. § 476.304(b) (1986). Moreover, the agency statement accompanying the final regulations had indicated that decisions on funds withdrawals were ultimately political, to be "worked out ... at a distance from the FHWA involvement." 643 F.Supp. at 769, J.A. at 154; *see* 45 Fed.Reg. 69,390, 69,393 (1980). Accordingly, the District Court held that "[i]n light of the deference given to the Governor, and the political nature of local decisionmaking, the July 10th letter from Governor Harris, confirming substantial support for I–420 withdrawal reflects a ration-

---

May 24, 1983, Mayor Young permitted the resolution to become effective without his signature. He stated that "[m]y decision not to sign the resolution is unrelated to the central issue of Georgia 400. On that issue, I have stated clearly that I will follow the will of the Council, and I understand the Council's position to be opposed to Georgia 400." J.A. at 102. The Council reaffirmed its opposition to the channeling of I–420 funds to Georgia 400 in a resolution passed June 20, 1983, J.A. at 103–04, and the Mayor again permitted the resolution to become effective without his signature, repeating that he would support the Council in opposing the transfer of I–420 funds to Georgia 400. J.A. at 91. Throughout this process, both the City Council and the Mayor continually reaffirmed the "clear consensus within [the] City that I–420 should not be built." J.A. at 91.

2. Regulations implementing the Act provide that
    [a] request to withdraw an Interstate segment within a State ... shall be submitted jointly by the Governor and local governments concerned. For those segments within urbanized areas, the concurrence of responsible local officials is also required.

23 C.F.R. § 476.304(a) (1986). "In urbanized areas," the "responsible local officials" are the "principal elected officials of general purpose local governments acting through the Metropolitan Planning Organization." 23 C.F.R. § 476.-2(7)(i) (1986). The Atlanta Regional Commission constitutes this body of officials for the Atlanta area.

3. Defendants claim that the Governor's letter and the attached opinion letter from the Georgia Attorney General constituted the "necessary clarification." Yet, the Governor's letter merely reaffirms that Atlanta opposes transfer funding for Georgia 400. J.A. at 113. The Attorney General's letter is no different, concluding that "Atlanta has expressed the desire to see the I–420 funds withdrawn and reprogrammed and has expressed to the [Atlanta Regional Commission] its continuing opposition to the construction of Georgia 400 as a substitute project." J.A. at 114–16. These letters "clarify" only that Atlanta continued to oppose I–420 funds being transferred to Georgia 400, precisely the situation that caused the Department to seek additional "clarification" in the first place.

al basis for the decision to lift approval conditions." 643 F.Supp. at 769, J.A. at 155. This appeal followed. We reverse and remand to the District Court with instructions to order the Department to reconsider the matter in light of the concerns expressed in this opinion.

## I. THE MEANING OF "JOINT REQUEST"

█ If, as plaintiffs argue, the "joint request of a State Governor and the local governments concerned" that the statute mandates for withdrawals requires unanimity among all concerned jurisdictions, then Atlanta's opposition to I–420 funds withdrawal absent the assurance that the money would not go to Georgia 400 would be fatal. It is less than plain, though, that "joint request" must mean "unanimous agreement." On the one hand, "joint" might refer to the substantive result of the local decisionmaking process, describing only those requests that are joined by all relevant parties. On the other hand, "joint" might refer to the process itself, recognizing only requests that result from a decision in which all relevant parties participate. Or perhaps "joint" denotes a modified combination of these two possibilities, referring to a group decisionmaking process that yields a consensus, though not necessarily a unanimous one. Thus, although "joint" might mean "unanimous," in the context of this law, it need not.

In fact, the requirement that a request be unanimous would be distinctly antidemocratic in a situation (unlike the one here) in which many local governments have jurisdiction over the area encompassing the Interstate section in question; in such a case any one government could hold out against the consensus of all the others or freely extract concessions for its consent. Highways might be built that only one of several jurisdictions wanted. There is unfortunately no indication from either the Senate or House Reports on the highway aid bill

as to the intended meaning of "joint request." In the interpretive vacuum created by no clearly expressed congressional intent, either in text or legislative history, we generally defer to the Department's statutory construction, if it is reasonable. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Department regulations explain that "[w]hile unanimous local action is not required, the withdrawal request is expected to have substantial support." 23 C.F.R. § 476.304(b) (1986). This nonunanimity proposal had received some criticism during the notice and comment period, but the Department stuck with it in the final rule, noting that "the statutory language [does] not requir[e] local unanimity and [is] basically judgmental in application." 45 Fed. Reg. 69,390, 69,393 (1980). In its initial proposal, the Department had explained that "[w]hile it is not feasible to prescribe a numerical standard, local officials are expected to act cooperatively to develop proposed actions which will have the support of a substantial majority of those concerned." 45 Fed.Reg. 2,296, 2,299 (1980).[4] This explanation indicates that the Department views the requirement of a "joint request" as demanding *cooperation* of the relevant decisionmakers in making a decision that a *substantial majority* of those decisionmakers will support. This interpretation of "joint request" comports with one of the readings we have suggested above (the modified combination of substantive and procedural concerns), and is a reasonable one on its face. Its application in particular instances might, however, still raise questions of fidelity to the statutory design.

Thus, without clear contrary congressional intent, we accept as reasonable the Department's construction of a "joint request" as one requiring only "substantial support."[5] Therefore, Atlanta's failure to

---

**4.** "Local officials" here does not refer to the more specific group of "responsible local officials" who also must concur in the request, *see* note 2, *supra,* for that requirement was discussed in the preceding paragraph in the Federal Register. Rather, "local officials" here refers

generically to all those who participate in the withdrawal and substitution process.

**5.** In its entirety, the regulation provides that [j]oint submittal may be accomplished by a single request prepared by the Governor and

support unconditionally the withdrawal of I–420 funds would not automatically preclude such a withdrawal merely because unanimity was absent. The question remains, however, whether "substantial support" existed in this instance under the Department's own interpretation and regulations.

## II. Inadequate Explanation of Decision

■ In removing the conditions from the September 29, 1983, approval letter, the Department in 1984 told the Governor that "[y]our letter and other information received since September 1983 have provided the necessary clarification" of the degree of local support for an unconditional withdrawal of I–420 funds. J.A. at 125. Yet, it is undisputed that nothing had changed in the intervening year: Atlanta still supported the withdrawal only if no money went to build Georgia 400; the other decisionmakers (the Governor, DeKalb County, Atlanta Regional Commission) still supported an unconditional withdrawal of funds. Thus, the problem that the Department was grappling with in 1983—the opposition of one of only two local governments concerned—had not gone away by 1984. Without ever explaining why a problem had miraculously become a nonproblem, the Department gave the go-ahead for the withdrawal and substitution of funds, including money for Georgia 400.

The Department may, of course, simply have been confused initially regarding the application of its "substantial support" standard to a situation with only two local governments, and subsequently may have resolved the issue in its own ranks by concluding that one out of two is enough when the Governor and the local officials (the Atlanta Regional Commission) also concur. But such an explanation is nowhere to be found in the record, and would therefore be purely a post hoc rationalization, placing the Department's decision in the best light, but not necessarily in an accurate light. Without any verification, it is equally possible to speculate that the Department may continue to believe that substantial support cannot exist when one of two local governments strongly objects, but has succumbed to lobbying pressure from the Governor and the law firm hired by the Atlanta Chamber of Commerce.[6] While there is certainly nothing improper about applying or listening to such outside pressure, it nonetheless remains unclear on this record whether in *this* case the Department actually concluded that substantial support existed and therefore deferred to the Governor as a matter of statutory in-

concurred in by the local governments concerned. This may also be accomplished by a request by the Governor with separate concurrence documentation by the local governments concerned. In either case, for those segments within urbanized areas, the concurrence of responsible local officials is also required. While unanimous local action is not required, the withdrawal request is expected to have substantial support.

23 C.F.R. § 476.304(b) (1986). Plaintiffs contend that the regulation's requirement of "substantial support" refers only to the local *officials,* not the local *governments.* We think this reading is incorrect. The sentence regarding the concurrence of local officials was absent from the initial proposal, and one comment suggested that it be added to clarify that the concurrence is required under § 476.304(b) regardless of the method used to accomplish the joint request. *See* 45 Fed.Reg. 69,390, 69,393 (1980). Thus, the requirement of "substantial support" initially could only have referred to local governments. We do not think that the added sentence regarding responsible local officials was meant to unhinge the substantial sup-

port requirement from local governments. Further corroboration for this reading appears in the statement accompanying the final rule, which explains that "[s]ubstantial local support coupled with the approval of the Governor and, in urbanized areas, with concurrence of responsible local officials has proven to be a workable approach in withdrawal submissions to date and would become no clearer if assigned a numerical guideline." *Id.* Here, the reference to responsible local officials is plainly separated from the requirement of substantial local support by the phrase "coupled with." In short, the regulations clearly require the substantial support of local governments concerned.

6. *See* J.A. at 126 (letter from lobbyist to FHWA Administrator); J.A. at 127–28 (affidavit from Atlanta resident describing her telephone conversation with FHWA lawyer who allegedly told her that "the decision [to lift the conditions] was a political one, not a legal one," and that "lobbyists had become involved in the matter, and that they had applied pressure, and that the decision was made by the politicians").

terpretation, or whether it merely acceded to his request without deciding the difficult question of whether one out of two is the equivalent of substantial support.

Some credible explanation is necessary for what happened here. For there is certainly a strong argument that if the major local government involved in an urban highway project—the relevant city—objects to an unconditional withdrawal, then substantial support of the local governments concerned cannot be said to exist. The Department should have addressed this problem during its decisionmaking process. Only a remand now for a belated explanation of the Department's perplexing behavior can flush out its decisionmaking process so as to permit judicial review of whether it acted according to law.

### III. THE SEPTEMBER 30, 1983, CUTOFF DATE

■ This case presents an additional dilemma. The Act provides that "[s]ubstitute projects under this paragraph may not be approved by the Secretary under this paragraph after September 30, 1983, and the Secretary shall not approve any withdrawal of a route under this paragraph after such date...." 23 U.S.C. § 103(e)(4).[7] It is not totally clear whether the FHWA's September 29, 1983 letter, conditionally approving the withdrawal of I-420 funds and the substitute project concepts (including Georgia 400), constituted a withdrawal and substitution approval under § 103(e)(4), or whether the necessary approval did not actually take place until the September 11, 1984, letter stating that the conditions had been removed. J.A. at 92, 125. Although it did not explicitly address this issue in either the 1983 or 1984

letters, the FHWA obviously acted on the assumption that its 1983 conditional approval of both the I-420 withdrawal and the substitute project concepts met the deadline. *See, e.g.,* J.A. at 111 (internal memorandum discussing Atlanta's continued resistance to I-420 withdrawal if the funds would go to Georgia 400; describing as the "[w]orst case" the "re[s]cission of our conditional approval with loss of withdrawal option because the withdrawal deadline has passed"). The question of whether the cutoff date was met in this case boils down to whether a conditional approval meets the statutory definition of an approval. Although plaintiffs have argued that the deadline was missed, they do not suggest what relief a court could grant other than reinstating the status quo as of September 30, 1983, which would necessitate that the funds be used for I-420, a result desired by no one.[8] Defendants have not raised this issue on appeal; the District Court did not address it in its opinion.

Nor do we decide at this time whether the September 29, 1983 conditional approval followed by the September 11, 1984 removal of those conditions constituted withdrawal and substitution within the statutory timetable. As we discussed above, the Department has never explained how its "substantial support" regulation applies in the context of this case, nor, for that matter, why Atlanta's failure to concur in an unconditional I-420 funds withdrawal was a problem in 1983 but not in 1984. In the course of explaining its rationale on these matters, the Department should also elucidate its construction of the September 30, 1983, statutory deadline for withdrawal of

---

7. Department regulations add that "[w]ithdrawal requests may not be approved ... after September 30, 1983, unless [an exception not relevant to this case applies]." 23 C.F.R. § 476.-302(c). In its statement accompanying the final rule, the Department was firm in its warning:
   Withdrawal requests and concept programs submitted between July 30, 1983, and September 30, 1983, will be given prompt consideration so that the September 30, 1983, time limitation can be met. However, the statutory language does not provide any flexibility

with regard to this time limitation. It may be difficult to provide approvals for requests which are submitted just prior to September 30, 1983, if they lack appropriate documentation or are found deficient in some other regard.
   45 Fed.Reg. 69,390, 69,391 (1980).

8. Indeed, defense counsel suggested at oral argument that since the state opposes I-420, it would never be built even if federal funds were targeted for its construction.

funds and substitution of other projects with regard to the facts of this case.

Accordingly, we reverse and remand to the District Court with instructions to order the Department to reconsider the matter in light of this opinion.

*It is so ordered.*